Smith, C. J.
The case is this : —
The plaintiff, a deputy sheriff, June 2, 1812, attached the horses in question, on writ, Samuel & James Hutchins v. Clarke, and delivered them to defendant [on bis written promise], to re-deliver on' demand. Defendant suffered them to return to the debtor’s possession. Another writ was obtained against the same debtor in favor of another creditor (Newgate State Prison), and delivered to another deputy sheriff [Edson], who, finding the horses in Clarke’s possession, July 4, 1812, attached them, and took them into his possession. The defendant, to get rid of his responsibility to plaintiff, took the horses from Edson’s custody, i. e. from stable in which he had put them, and delivered them to plaintiff, though plaintiff had made no demand. Judgment was not yet recovered. Plaintiff, then ignorant of the fact of any lawful attachment, or any attachment, by Edson, received them (it is not stated whether writing delivered up to defendant). Edson, immediately after, demanded the horses of plaintiff. Plaintiff then offered them to defendant (to settle the matter with Edson, and judge for himself whether Edson could hold). Defendant refused to accept. Edson then took the horses; and plaintiff now calls on defendant, on the ground that the delivery, July 4, 1812, was unlawful, and acceptance by mistake.
The contract[2] was that the delivery should be such as that Hutchins’s execution might be levied ; whereas defendant had conducted in such a manner that no such delivery could be made after Edson’s attachment. He had disabled himself from making a proper delivery. Edson had a lien on the horses, and could lawfully take them from plaintiff; and all by defendant’s unfaithful conduct as bailee.
*431 The intention of the parties in the contract sued is apparent. Defendant was bound to same safe-keeping as plaintiff would have been ; i. e., to have the horses forthcoming on Hutchins’s execution. He broke his s contract when he suffered the horses to return to debtor’s possession; i. e., he ran the risk of any other creditor attaching, debtor selling, &c., and so disabling him to perform. The effect of this engagement was to return the horses to plaintiff,"so that the execution might be levied on them, and plaintiff exonerated from his responsibility to S. & J. Hutchins, the creditors.
There was an apparent delivery, but no real delivery. It was a fraudulent delivery, an unlawful one, a deceptive one. The property was changed, and the "delivery availed nothing, left plaintiff liable to S. & J. Hutchins.
I think this performance comes the nearest the case in the books, where a man engaged to deliver a horse; he poisoned him, and then delivered him. This was held no performance of his engagement. 2 G. Bacon, 82, and note.

Judgment on the verdict.

[1]

 I. in legal construction. The report of the judge who tried the cause shows that, in words, the contract was “to return them on demand.”

 “If the receipt is in common form, and the officer lawfully demands the property, the receiptor must deliver it to him free from intervening rights, or become liable. If the property has been sold, it could not avail the receiptor to deliver it to the officer, subject to a title in a third person, acquired since the receipt was given. It must, when delivered, be subject to a levy in the same manner as when he received it, or the receiptor will not bo exonerated.” Hibbard, J., in Batchelder v. Putnam, 1873, 54 N. H. 84, 86.